

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-10-00171-CV

_____

**MARY FRANCES HAFERKAMP,**

                                                    **Appellant**

 **v.**

**SSC WACO GREENVIEW OPERATING
COMPANY, LP, MARINER HEALTHCARE
MANAGEMENT COMPANY, SSC PASADENA
OPERATING COMPANY, LP, LLC,
SAVANSENIORCARE, LLC, SAVASENIORCARE
ADMINISTRATIVE SERVICES, LLC,**

                                                    **Appellees**

_____

### From the 414th District Court
### McLennan County, Texas
### Trial Court No. 2007-1083-5

_____

## MEMORANDUM OPINION

_____

Mary Frances Haferkamp appeals the trial court's summary judgment in favor of SSC Waco Greenview Operating Company LP, Mariner Healthcare Management Company, SSC Pasadena Vista Operating Company, SavaSeniorCare, LLC, and SavaSeniorCare Administrative Services, LLC (collectively, Appellees). We will affirm.

In her second amended petition, Haferkamp sued Appellees for negligence arising out of an alleged workplace injury. Haferkamp specifically alleged that Appellees were nonsubscribers to worker's compensation insurance and that, while in the course and scope of her employment, Haferkamp sustained bodily injuries at Appellees' Greenview Manor nursing home facility in Waco. On the occasion in question, Appellees were negligent "in failing to provide [Haferkamp] with a reasonably safe place to work" and "in failing to furnish to [Haferkamp] reasonably safe and adequate implements or tools with which she could perform her duties for her employers without exposing herself to an unreasonable risk of accidental personal injuries and disabling injuries." Appellees' negligence, "individually and/or collectively, jointly and severally," was a proximate cause of Haferkamp's injuries and resulting damages.

Appellees filed a traditional motion for summary judgment on Haverkamp's negligence claim, arguing that: (1) Haferkamp's deposition testimony conclusively established that Appellees' alleged negligence was not the proximate cause of her injuries; (2) the summary-judgment evidence established that Appellees exercised ordinary care and thus did not breach their duty to Haferkamp; and (3) SSC Waco Greenview Operating Company LP, SSC Pasadena Vista Operating Company, SavaSeniorCare, LLC, and SavaSeniorCare Administrative Services, LLC, were not Haverkamp's employers on the date in question and thus cannot be liable.

Haverkamp subsequently filed her third amended petition and asserted two additional theories of how Appellees allegedly breached their duty to her: (1) "in

failing to have sufficient staff on duty on the occasion in question" and (2) "in violating the terms, provisions and mandates of Chapter 411 of the Texas Labor Code" (*i.e.*, negligence *per se*).[1]  *See Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Negligence *per se* is not a separate cause of action that exists independently of a common-law negligence cause of action.  Rather, negligence *per se* is merely one *method* of proving a breach of duty, a requisite element of any negligence cause of action.") (citations omitted).  Haverkamp also added individual defendants Leonard Grunstein and Murray Forman.[2]

After Haferkamp filed her third amended petition, Appellees did not amend or supplement their summary-judgment motion.  The trial court severed Haverkamp's claims against Grunstein and Forman, granted Appellees' motion for summary judgment, and dismissed with prejudice Haferkamp's claims against Appellees in their entirety.

---

[1] As laid out in the third amended petition, section 411.103 of the Labor Code states:

> Each employer **shall**:
>      (1)  provide and maintain employment and a place of employment that is reasonably safe and healthful for employees;
>      (2)  install, maintain, and use methods, processes, devices, and safeguards, including methods of sanitation and hygiene, that are reasonably necessary to protect the life, health, and safety of the employer's employees; and
>      (3)  **take all other actions reasonably necessary to make the employment and place of employment safe.**

TEX. LAB. CODE ANN. § 411.103 (West 2006) (emphasis added where emphasis indicated in Haferkamp's petition).

[2] Haverkamp alleged that Grunstein and Forman participated in a conspiracy in which they created multiple layers of corporate ownership and then used the corporate ownership to hide or obscure their true identity as the owners and operators of the Greenview Manor nursing home.  Haverkamp alleged that the corporate defendants were thus "sham entities which serve[d] no legitimate business purpose other than to further the conspiracy of the individual defendants," and, therefore, liability should be imposed on Grunstein and Forman.

In her sole issue, Haferkamp contends that the trial court erred in granting Appellees' motion for summary judgment. We review a trial court's summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). The movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). The nonmovant has no burden to respond to a summary-judgment motion unless the movant conclusively establishes its cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 23. Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, however, the burden shifts to the nonmovant to present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In reviewing a traditional summary judgment, we must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 756.

Haferkamp first argues that the trial court erred in granting summary judgment to Appellees because their motion for summary judgment was directed to her second amended petition rather than her third amended petition, which was the live pleading at the time of the summary-judgment hearing. We disagree.

Generally, a movant who does not amend or supplement its pending motion for summary judgment to address newly added claims in a subsequent petition is not entitled to summary judgment on those claims. *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In such a case, the portion of the summary judgment purporting to be final must generally be reversed because the judgment grants more relief than requested in the motion. *See Wilson*, 305 S.W.3d at 73; *Blancett*, 177 S.W.3d at 592. Limited exceptions apply to this rule: when the movant has conclusively proved or disproved a matter (usually corresponding to a claim's element or to an affirmative defense) that would also preclude the unaddressed claim as a matter of law or when the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed claim. *Wilson*, 305 S.W.3d at 73 & n.13.

In her second amended petition, Haferkamp's sole cause of action against Appellees was common-law negligence, which consists of three elements: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) damages proximately caused by that breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Appellees moved for summary judgment in part on the third element—that the summary-judgment evidence conclusively established that Appellees' alleged breach of duty was not the proximate cause of Haferkamp's injuries.

In her third amended petition, Haferkamp did not add any additional independently viable causes of action to the lawsuit. Instead, she added two additional

theories of how Appellees allegedly breached their duty to her.[3] To succeed on her negligence claim as alleged in her third amended petition, however, Haferkamp still had to establish that Appellees' alleged breach of duty was the proximate cause of her injuries. Because we conclude below that Appellees conclusively established that their alleged breach was not the proximate cause of Haferkamp's injuries, Haferkamp cannot establish her negligence claim as alleged in her third amended petition. Thus, the trial court did not err by granting Appellees' motion for summary judgment and dismissing with prejudice Haferkamp's claims against Appellees in their entirety.

Haferkamp next argues that the trial court erred in granting summary judgment to Appellees because the summary-judgment evidence establishes a genuine issue of material fact. But, as just stated, we conclude that Appellees have conclusively established that their alleged breach of duty was not the proximate cause of Haverkamp's injuries.

Proximate cause is generally a fact question. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 266 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). A lack of proximate cause may be established as a matter of law, however, where the evidence is without material dispute and the circumstances are such that reasonable minds could not arrive at a different conclusion. *Id.* It may also be a question of law when the relationship between the plaintiff's injuries and the defendant's negligence is attenuated or remote. *Id.*

---

[3] She also added Grunstein and Forman as individual defendants and alleged conspiracy and alter ego claims against them as theories of recovery. But, as stated above, these claims were severed.

Proximate cause requires both cause in fact and foreseeability. *D. Houston, Inc.*, 92 S.W.3d at 454. These elements cannot be satisfied by mere conjecture, guess, or speculation. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2003). The test for cause in fact is whether the act or omission was a substantial factor in bringing about the injury, without which the injury would not have occurred. *Id.* at 799; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Cause in fact is not established where the defendant's negligence does no more than furnish a condition that makes the injuries possible. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799; *Doe*, 907 S.W.2d at 477. In other words, the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 799; *Doe*, 907 S.W.2d at 477.

Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission. *Doe*, 907 S.W.2d at 478. The particular accident or injury need not be foreseen. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985). Foreseeability requires only that the injury be of a general character that might reasonably have been anticipated and that the injured party be situated in relation to the wrongful act so that the injury to her or to someone similarly situated might reasonably have been foreseen. *Id.*

Appellees attempted to conclusively establish that the alleged negligence was not the cause in fact of Haferkamp's injury by relying on Haferkamp's deposition testimony. Haferkamp testified in her deposition that she was injured when she, a

licensed vocational nurse, reached out to assist a nursing-home resident who was standing and then suddenly sat down on the floor. Haferkamp stated that the resident's act of sitting down was unexpected and sudden. When asked if there was any way that she could think of to have prevented the resident from doing what she did, Haferkamp replied, "I can't think of anything," and agreed that it was unpreventable.

Haferkamp was asked what, if anything, those at the nursing home should have done differently that day. Haferkamp replied that she could not think of anything they could have done differently except have gait belts available. Haferkamp was also asked separately if there was any equipment that would have made a difference that night, and she replied, "Well, possibly if I had been wearing a gait belt, if I had had a gait belt there." Despite her suggestions that she should have had access to a gait belt, Haferkamp repeatedly said that even if she had had a gait belt on the night that she was injured, she would not have used it:

> Q. And did you ever think that night, "Well, I need a gait belt"?
>
> A. No, sir.
>
> . . . .
>
> Q. Sure. From the time Mr. Shelton waved you down or flagged you down and you went into Mrs. Shelton's room until this incident occurred there was nothing going on that made you think you needed a gait belt?
>
> A. No, sir.
>
> . . . .

Q. And one thing you do know is that from what you saw in dealing with Ms. Shelton that evening on April 13, 2005, you didn't see anything when you went in there to assist her and her son that made you thing you needed a gait belt?

A. No, sir.

. . . .

Q. . . . .
My question is during that minute or so that you were with Ms. Shelton prior to her suddenly sitting down, you didn't see any reason to get a gait belt or any assistive device, did you?

A. No, sir.

Haferkamp was also asked, "And in looking back in hindsight, can you see anything now that you would have done any different if that same situation were to develop?" Haferkamp replied, "No, I can't."

Haferkamp also stated in her deposition that she never thought that she needed assistance on the night that she was injured:

Q. And you didn't see anything that made you think you needed somebody else in there with you and her son, did you?

A. No, sir, not at that time.

Q. As far as dealing with what you dealt with there with Ms. Shelton, you thought with you and her son and her in her physical condition, that that was all of the folks that needed to be there, true?

A. Yes, sir.

. . . .

Q. In fact, you didn't see a reason to call out for anybody else to assist you, did you?

A. No, sir.

She confirmed that she thought she and the patient's son had the situation well in hand. Haferkamp was asked, "But other than letting them fall, Ms. Haferkamp, there was nothing you could have done different that night, was there?" She replied, "Not at that time, no, sir."

This summary-judgment evidence conclusively established that Appellees' alleged breach of duty was not the cause in fact of Haferkamp's injury. Appellees therefore satisfied their initial burden and shifted the burden to Haferkamp to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc.*, 899 S.W.2d at 197.

In support of her argument that the summary-judgment evidence raises a fact issue, Haferkamp points to an affidavit that she made after her deposition in which she stated:

> Gait belts were not kept at the Nurses Station before my injury. If a gait belt had been available to me I would have had it with me at all times when I was on duty.
>
> . . . .
>
> . . . If my employer had issued me a gait belt before the injury causing event I would have used it to ease the patient to the floor, wheelchair or bed in a manner that would not have caused the injury to my back.

But the trial court expressly sustained Appellees' objections to these statements in Haferkamp's affidavit and ordered that the statements be inadmissible and stricken. Haferkamp does not challenge this ruling. Therefore, these statements in Haferkamp's affidavit cannot raise a fact issue.

Haferkamp also contends that Appellees should not have been granted summary judgment because section 406.033 of the Labor Code provides that contributory negligence, assumed risk, and negligence of a fellow employee are not defenses in a suit such as this. *See* TEX. LAB. CODE ANN. § 406.033(a) (West Supp. 2011). Appellees did not assert these defenses, however. Appellees did not assert that Haferkamp was negligent. Rather, Appellees asserted that their alleged breach of duty could not have caused Haferkamp's injuries because she testified that the patient's act of sitting down was unexpected and sudden and, in hindsight, there is nothing that she would have done differently. To the extent that Haferkamp is complaining about the overruling of objections she made based on this argument, we conclude that the objections were properly overruled.

Haferkamp failed to produce evidence raising a fact issue as to whether Appellees' alleged breach of duty was the cause in fact of her injury. Thus, the trial court did not err in granting Appellees' motion for summary judgment. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010) ("A defendant who conclusively negates at least one of the essential elements of a cause of action . . . is entitled to summary judgment."). We overrule Haferkamp's sole issue and affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed March 14, 2012
[CV06]